**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>KOFFI B. AMEYAPOH, )<br>   Defendant. ) | Criminal No. 1:17-CR-232 |

## MEMORANDUM OPINION

Defendant was tried and convicted on the following two counts: (i) count I – preventing or hampering defendant's departure and removal from the United States, in violation of 8 U.S.C. § 1253(a)(1)(C); and (ii) count II – forcibly resisting, opposing, impeding or interfering with an Immigration and Customs Enforcement ("ICE") Officer, in violation of 18 U.S.C. § 111(a). At issue post-trial is defendant's motion for judgment of acquittal, which presents the question whether the evidence presented at trial and the jury instructions constructively amended count II of the indictment, in violation of defendant's Fifth Amendment right to a Grand Jury indictment.

The matter has been fully briefed, and is now ripe for disposition.

**I.**

Defendant, Koffi Ameyapoh, a citizen of Togo, entered the United States through New York, New York as a non-immigrant F-1 student visitor on August 29, 1994. On November 12, 2000, defendant adjusted his status to a conditional permanent resident after marrying a United States citizen.

Several years later, on July 14, 2006, defendant was convicted in the Circuit Court for Montgomery County, Maryland of one count of Sexual Abuse of a Minor, two counts of Rape in the Second Degree, and four counts of Sexual Offense in the Third Degree. Following his conviction, on February 17, 2010, defendant was ordered removed from the United States based

1

on his conviction of crimes constituting aggravated felonies. However, prior to defendant's removal, on August 27, 2013, defendant's Maryland convictions were vacated and his removal proceedings were reopened and remanded to the immigration judge for further proceedings.

State prosecutors elected to retry defendant and on July 16, 2014 a jury convicted defendant on the same charges. On August 1, 2016, the immigration judge again found defendant removable based on his convictions for several aggravated felonies. Defendant filed a request for deferral of removal under the Convention against Torture. The immigration judge denied defendant's request and defendant appealed to the Board of Immigration Appeals ("BIA"). On May 22, 2017, the BIA denied defendant's appeal and ordered his removal. On June 15, 2017, defendant filed an appeal of the BIA decision with the Fourth Circuit Court of Appeals.[1]

On August 7, 2017, defendant was scheduled to be deported from Dulles International Airport ("Dulles Airport") by boarding a commercial airliner to travel back to Togo. Defendant, who was in ICE custody, was taken by two ICE officers, Officer Lewis and Officer Ricketts, to Dulles Airport. Both officers testified at trial concerning defendant's behavior and demeanor on the trip to Dulles Airport, and defendant's acts of resistance against the ICE officers in the parking garage at Dulles. The officers testified that during the ride to Dulles, defendant commented that he would rather die than go back to Togo. When the ICE officers and defendant arrived at Dulles, defendant resisted leaving the car. After the ICE officers coaxed defendant from the vehicle, defendant began to walk away from the officers and toward the edge of the roof

---

[1] Defendant sought a stay of his removal on August 31, 2017. On November 7, 2017, the Fourth Circuit dismissed defendant's petition for review of the BIA order, holding that is lacked jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C) "based on Ameyapoh's concessions that he is a native and citizen of Togo and that he was convicted of an aggravated felony." *See Ameyapoh v. Sessions*, No. 17-1729, Order Dismissing Petition for Review at *1 (4th Cir. Nov. 7, 2017).

of the parking garage. Defendant did not comply with the ICE officers' orders to stand in front of the car, and the officers became concerned that defendant might attempt to throw himself over the edge of the parking deck. Accordingly, after defendant lunged toward the edge of the garage, Officer Ricketts restrained defendant and took him to the ground. Officer Lewis moved to assist Officer Ricketts in restraining defendant and together the two officers returned defendant to the car.

After returning defendant to the car, the ICE officers were concerned that they would not be able to effectuate defendant's removal without assistance. Accordingly, the ICE officers called Customs and Border Protection ("CBP") officers at Dulles Airport and requested assistance in moving defendant through the airport so that he could board the commercial airliner to travel back to Togo. After CBP officers agreed to assist with defendant's removal, Officers Lewis and Ricketts drove to the entrance of the airport where CBP officers physically removed defendant from the car and began escorting defendant to the departure terminal. After CBP officers removed defendant from the car, the CBP officers, not ICE officers, maintained custody of defendant throughout the airport.

At trial, CBP officers Eric Caride and Juan Ulloa testified that they attempted to escort defendant to the departure area, but defendant physically and vocally resisted these efforts. Specifically, defendant dragged his feet and kept repeating that he would not leave. At this point, two additional CBP officers arrived to assist in transporting defendant, but as they began carrying defendant to the departure area, defendant began thrashing and attempted to break free from the CBP officers. Defendant's thrashing about and other efforts to resist took several CBP officers to the ground, causing significant injury to one of the officers. In the end, the CBP officers were able to subdue defendant and place him in a holding cell. The government also

presented video evidence at trial that corroborated the CBP officers' testimony. After defendant's physical acts of resistance, CBP and ICE decided that defendant could not be placed on a commercial airliner and removed, and defendant was returned to the custody of ICE.

Following the August 7, 2017 incident, defendant was charged in a two count indictment with (i) count I – preventing or hampering his departure from the United States in violation of 8 U.S.C. § 1253(a)(1)(C); and (ii) count II – forcibly resisting, opposing, impeding or interfering with an Immigration and Customs Enforcement Officer in violation of 18 U.S.C. § 111(a) Specifically, count II of the indictment charged that:

> On or about August 7, 2017, at Dulles International Airport in the Eastern District of Virginia, and elsewhere, the defendant, KOFFI B. AMEYAPOH, did willfully and forcibly resist, oppose, impede and interfere with persons designated in section 1114 of Title 18, officers or employees of *United States Immigration and Customs Enforcement*, Department of Homeland Security, while such officers or employees were engaged in the performance of official duties, and which act involved the intent to commit another felony, namely, Failure to Depart, as alleged in Count 1.

(emphasis added)

At trial, the government presented evidence, as described above, that defendant physically and forcibly resisted and ultimately prevented his removal and departure from the United States by resisting and struggling with officers affiliated with ICE and CBP. The evidence with respect to count II related to defendant's forcible resistance against CBP officers, not ICE officers.

At the close of the government's case, defendant moved for a judgment of acquittal with respect to count II, arguing that there was insufficient evidence of forcible conduct against ICE officers for count II to be submitted to the jury. In the alternative, defendant argued that the government should be precluded from arguing for a conviction on count II premised on defendant's conduct against CBP officers, because the indictment alleged forcible conduct only

4

against ICE officers. Defendant's motion was denied, but the verdict form asked the jury to answer three questions: (i) with respect to count I, whether the government had proven that defendant hampered or prevented his removal, (ii) with respect to count II, whether the government had proven that defendant forcibly resisted ICE officers, and (iii) with respect to count II, whether the government had proven that defendant forcibly resisted CBP officers. There were no objections to either the jury instructions or the jury verdict form.[2] In the end, the jury unanimously found that the government had proved beyond a reasonable doubt with respect to count I that defendant had unlawfully hampered his removal. With respect to count II, the jury found that the government had failed to prove beyond a reasonable doubt that defendant forcibly resisted ICE officers, but found unanimously that defendant had forcibly resisted CBP officers. Based on the jury's answers to those interrogatories, defendant was convicted of counts I and II.

## II.

The Fifth Amendment emphatically declares that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on . . . indictment of a Grand Jury[.]" U.S. Const. amend. V. The Supreme Court has held that where, as here, "the crime charge[d] . . . is a felony . . . the Fifth Amendment requires that prosecution be begun by indictment" and "that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). Broadening of the bases for conviction is referred to as a constructive amendment, and "occurs when either the

---

[2] Defendant's failure to object to the instructions and the verdict form does not bar defendant from raising his constructive amendment argument because "under *Stirone*, constructive amendments of a federal indictment are error per se, and, under *Olano*, must be corrected on appeal even when not preserved by objection." *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994) (en banc). *See also United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) ("a constructive amendment violates the Fifth Amendment right to be indicted by a grand jury, is error per se, and must be corrected on appeal even when the defendant did not preserve the issue by objection.").

government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994) (en banc). Constructive amendments violate the Fifth Amendment's Grand Jury clause by allowing for the entry of a conviction on an offense different than that found by the Grand Jury. *Id.*

Not every difference between the facts alleged in the indictment and the facts proven at trial constitutes a constitutionally impermissible constructive amendment of the indictment. The Fourth Circuit has explained that a non-fatal "variance occurs when the facts proven at trial support a finding that defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed." *Floresca*, 38 F.3d at 709. Thus, "[w]hen different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). A variance does not violate a defendant's Fifth Amendment right "unless it prejudices defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Id*. It remains to apply these principles to this case to determine whether what occurred here was a non-fatal variance or a constitutionally impermissible constructive amendment of the indictment.

In this regard, the Supreme Court's decision in *Stirone* is instructive, and indeed ultimately dispositive. In *Stirone*, the Supreme Court held that a constructive amendment occurred where an indictment charged the defendant with Hobbs Act extortion based on alleged interference with commerce in sand, and then the evidence at trial and the jury instructions

allowed the jury to convict for Hobbs Act extortion based on interference with commerce in both sand and steel. *Stirone*, 361 U.S. at 218-19. The Supreme Court explained that "the indictment here cannot fairly be read as charging interference with movements of steel . . . [a]nd it cannot be said with certainty that with a new basis for conviction added [defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Id*. at 217. The Supreme Court considered the admission of evidence related to the distinct charge of interference with steel to be "neither trivial, useless, nor innocuous" because it allowed conviction for a separate offense not charged in the indictment, namely for a distinct Hobbs Act violation grounded in interference with commerce in steel. *Id.*

A careful comparison of the facts in this case with those presented in *Stirone* compels the conclusion that what occurred here, precisely like what occurred in *Stirone*, constituted an impermissible constructive amendment of the indictment. In *Stirone*, the government indicted the defendant for one act of extortion relating to interference with commerce in sand, but then presented evidence at trial of a separate unindicted act of extortion relating to interference with commerce in steel. The Supreme Court held that these were two separate crimes because the evidence related to different incidents occurring at different times, involving different people, and regarding distinct acts of extortion. The Supreme Court concluded that the failure to include interference with steel in the indictment meant that the defendant had never actually been indicted for any acts of extortion related to commerce in steel. Similarly, in this case defendant was indicted for one act of forcible resistance against ICE officers, and the government presented evidence of a separate unindicted series of actions related to forcible resistance against CBP officers. These two incidents involving resistance occurred in different places, at different times, and involved different individuals, and thus constituted two separate crimes. Indeed, § 111(a)

provides that even resistance against different officers during *the same incident* can constitute separate crimes for which a defendant can be indicted. *See United States v. Briley*, 770 F.3d 267, 270 (4th Cir. 2014) (involving a defendant charged with three § 111(a) counts based on his resistance against three officers during a single event). Thus, the indictment here alleged a violation of § 111(a) only with respect to defendant's resistance against ICE officers, and any resistance in violation of § 111(a) defendant later engaged in against CBP officers was not included in the indictment. Thus, in both *Stirone* and this case, an impermissible constructive amendment occurred because the indictment specified one crime, but the evidence at trial and the jury instructions allowed for a conviction for a distinct, unindicted offense.

Seeking to avoid this conclusion, the government argues that the indictment's identification of the officers did not relate to an "essential element" of the § 111(a) count in the indictment because the government could have alleged resistance against federal officers generally and still included all essential elements of a § 111(a) charge in the indictment. Therefore, according to the government the specification in the indictment of a particular group of officers against whom defendant forcibly resisted was mere surplusage, and a difference in proof at trial with respect to the affiliation of the officers against whom defendant forcibly resisted does not constitute a constructive amendment. The government's argument is foreclosed by *Stirone*, which rejected this exact argument in holding that even though "under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another has been burdened" where "only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another." 361 U.S. at 218-19. Thus, it does not matter that the government could have charged defendant with a § 111(a) violation by alleging generally in the indictment that he resisted federal officers. Because the

8

indictment specified that defendant was being charged with resistance against ICE officers, the defendant was never indicted for his resistance against CBP officers. In short, just as there were two crimes in *Stirone* that could have been alleged in one count, so too were there two crimes in this case that might have been alleged in a single count, and thus the constructive addition of such a count at trial is an impermissible amendment of the indictment.

The government also attempts to draw an analogy to a number of Fourth Circuit cases holding that a variance between the description of firearms in the indictment and the proof at trial constitutes only a variance and not a constructive amendment. According to the government, the variance between ICE and CBP, just like variances in the descriptions of firearms, does not expose the defendant to criminal liability for an unindicted offense. The government's analogy to the firearms cases fails; the cases are inapposite as in each of the firearms cases the variance between the description of the firearm in the indictment and the proof at trial did not broaden the basis for conviction and did not allege a new crime. Unlike the case at bar, the defendants in the firearms cases were not exposed to a conviction on charges not brought in the indictment.

The first of these cases, *United States v. Ford*, 986 F.2d 57, 59 (4th Cir. 1993), involved a situation where the indictment misidentified the length of a sawed off shotgun, though the indictment did correctly identify the serial number and other defining characteristics of the weapon. The Fourth Circuit held that this variance between proof at trial and the indictment did not constitute a constructive amendment because it related only to "form" and not substance. *Id.* The mistake in identifying the length of the shotgun did not expose the defendant in *Ford* to liability for a separate criminal offense. Thus, the *Ford* case differs from this case because here the identification of ICE officers rather than CBP officers did expose defendant to conviction for a separate § 111(a) offense because the indictment charged him only for resistance against ICE

9

officers, not against CBP officers. Had the proof in the *Ford* case identified a different firearm altogether, it is reasonable to assume that the same result would not have obtained there.

The other firearms cases on which the government relies are equally inapposite. Like *Ford*, the differences between the firearms in the indictments and the firearms proved at trial were minor, and the defendants were not exposed to conviction for unindicted crimes. For example, in *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991), the indictment correctly described the firearm the defendant there allegedly possessed in violation of 18 U.S.C. § 922(g)(1), but the indictment omitted one digit of the serial number. The Fourth Circuit sensibly held that this difference was a mere variance, and not a constructive amendment because the difference between the serial number in the indictment and the one proved at trial was not "so altered as to charge a different offense from that found by the grand jury." *Id.* (quoting *United States v. Holt*, 529 F.2d 981, 983 (4th Cir. 1975)). In other words, defendant in *Morrow* was charged with possessing a particular firearm and the factual difference between the indictment and proof at trial was not so substantial as to suggest that the defendant may have been convicted for an unindicted possession charge related to a different firearm.

Similarly, in *United States v. Redd*, 161 F.3d 793, 797 (4th Cir. 1998), the Fourth Circuit held that there was no constructive amendment where the indictment described the firearm used by defendant as a black revolver, but the proof at trial demonstrated the revolver was silver. The defendant had been charged with use of a firearm in furtherance of a robbery, and so the Fourth Circuit reasoned that the color of the gun was immaterial to guilt. *Id.* at 796. The misidentification of the color of the firearm used did not have the effect of exposing the defendant to further criminal liability because the defendant had been charged with use of a

firearm during the robbery, and proof of use of any particular firearm would satisfy that element of the offense.³

The government also cites Eighth and Tenth Circuit cases which have held it was not a constructive amendment where an indictment charging robbery of a federally-insured bank names one federal insuring agency, but proof at trial shows that the indictment misnamed that insuring agency. *See United States v. Davis*, 103 F.3d 660, 675–76 (8th Cir. 1996); *United States v. Janoe*, 720 F.2d 1156, 1159 (10th Cir. 1983). In both cases, the misidentification of the federal insurer did not constitute a constructive amendment because for purposes of bank robbery charges it is only the bank's status as being federally insured that matters, and the fact that a bank was in fact insured by a different insurer would not mean that a defendant was liable for a different bank robbery. In other words, the misidentification of the federal insurer did not give rise to liability for a separate crime. Unlike the defendants in *Davis* and *Janoe*, the defendants in *Stirone* and this case were exposed to conviction for a separate, unindicted crime. Here, defendant was exposed to conviction for a separate § 111(a) offense because the indictment specified a charge involving ICE officers and any resistance against CBP officers would be a distinct crime for which defendant could be separately held liable. Indeed, the more closely analogous situation with respect to a bank robbery charge would be where an indictment

---

³ The Fourth Circuit has not addressed the question whether alleging a type of firearm in the indictment different from the firearm proved at trial would constitute a constructive amendment. The Seventh Circuit, however, has and has held that a constructive amendment occurs where the grand jury indictment charging the defendant under § 924(c) refers to a single, specific firearm, identifying it as a rifle from a particular manufacturer and with a specific model number, but the government presents proof at trial related to three firearms, two of which were handguns different from the rifle charged in the indictment. *United States v. Leichtnam*, 948 F.2d 370, 379 (7th Cir. 1991). Under these circumstances, the Seventh Circuit sensibly recognized that such a difference exposed the defendant to additional liability, and essentially allowed the jury to convict the defendant for possession of two firearms for which the defendant was never indicted. *Id. Leichtnam* is thus fully consistent with *Stirone* and the result reached here. In *Leichtnam*, the jury was allowed to convicted the defendant based on his possession of two *additional* firearms not mentioned in the indictment, and thus the defendant was exposed to conviction for § 924(c) offenses for which he was not indicted, just as the defendant in *Stirone* was exposed to the possibility of conviction for unindicted interference with commerce and defendant in this case was exposed to the possibility of conviction for unindicted forcible resistance.

11

charges a defendant with robbing one bank and the evidence at trial related to the robbery of a different bank. Such a difference would allow a defendant to be convicted for a bank robbery not included in the indictment, just as defendant in this case may have been convicted for a § 111(a) violation not alleged in the indictment. Thus, the bank cases cited by the government are inapposite and unpersuasive.

The jury found defendant not guilty of forcibly resisting ICE officers, but guilty of forcibly resisting CBP officers, an offense not submitted to the grand jury. Therefore, defendant's Fifth Amendment right to be convicted only of offenses submitted to a grand jury was violated. Thus, for the foregoing reasons, defendant's motion for a judgment of acquittal with respect to count II of the indictment must be granted.[4]

An appropriate Order will issue.

/s/ T. S. Ellis, III
United States District Judge

Alexandria, Virginia
February 14, 2018

---

[4] Although, the parties spilled much ink on whether the result would be different if a mere variance were found, that issue need not be reached or decided. Nonetheless, it is worth noting that defendant could not show the requisite prejudice resulting from the variance for, as the government points out, defendant and his counsel were fully aware of the defect in the indictment and defendant's trial strategy was largely predicated on taking advantage of that defect. See Randall, 171 F.3d at 203 (holding that a defendant must show prejudice for a mere variance to amount of a Fifth Amendment violation).