IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 1:17-CR-232 |
| | ) | Civil No. 19-CV-26 |
| | ) | |
| KOFFI B. AMEYAPOH | ) | |

## MEMORANDUM OPINION

The matter is before the Court on Defendant Koffi B. Ameyapoh's motion for post-conviction relief pursuant to 28 U.S.C. § 2255. The government has filed a response opposing defendant's motion.[1] The matter is thus ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

I.[2]

Defendant is a citizen of Togo who entered the United States through New York, New York as a non-immigrant F-1 student visitor on August 29, 1994. *See* Memorandum Opinion at 1, dated February 14, 2018 (Dkt. 73) ("2018 Mem. Op.") (granting defendant's motion for acquittal on Count II). On November 12, 2000, defendant adjusted his status to a conditional permanent resident after marrying a United States citizen. *Id.*

On July 14, 2006, defendant, represented by counsel, was convicted in the Circuit Court for Montgomery County, Maryland of one count of Sexual Abuse of a Minor, two counts of Rape

---

[1] Defendant did not file a reply and the time to do so has now passed.

[2] The factual history recited here are derived from a February 14, 2018 Memorandum Opinion (Dkt. 73) and the Presentence Investigation Report (Dkt. 75). The procedural history is drawn from the filings submitted in this case.

1

in the Second Degree, and four counts of Sexual Offense in the Third Degree. *See* 2018 Mem. Op. at 1; Presentence Investigation Report ¶ 8 (Dkt. 75) ("PSR"). Following his conviction, on February 17, 2010, defendant was ordered removed from the United States based on his conviction of crimes constituting aggravated felonies. *See* 2018 Mem. Op. at 1; PSR ¶ 8. Prior to defendant's removal, on August 27, 2013, defendant's Maryland convictions were vacated, and his removal proceedings were reopened and remanded to the immigration judge for further proceedings. *See id.* State prosecutors elected to retry defendant, and, on July 16, 2014, a jury convicted defendant, acting *pro se*, on the same charges. *See* 2018 Mem. Op. at 2; PSR ¶ 9. He was sentenced to fifteen years imprisonment, with credit for time served. *See* PSR ¶ 9. Defendant appealed his conviction and his appeal was subsequently dismissed because he failed to provide a trial transcript. He was released on an immigration detainer on June 10, 2016. *Id.* On November 29, 2016, the immigration judge again found defendant removable based on his convictions for several aggravated felonies. *See id.* ¶ 10.

On August 7, 2017, defendant was scheduled to be deported from Dulles International Airport ("Dulles") by boarding a commercial airliner to travel back to Togo. *See* 2018 Mem. Op. at 2; PSR ¶ 11. Defendant, who was in U.S. Immigration and Customs Enforcement ("ICE") custody, was taken by two ICE officers to Dulles. On the way to Dulles, defendant informed the officers that he would rather die than go back to Togo. *See* PSR ¶ 11. Upon arrival at Dulles, defendant resisted leaving the car and then lunged towards the edge of the roof of the parking garage. *Id.* at 12; 2018 Mem. Op. at 3. The ICE officers then called Customs and Border Protection ("CBP") officers for assistance. The CBP officers escorted defendant to the departure terminal as defendant physically and verbally resisted their efforts. 2018 Mem. Op. at 3.

Two additional CBP officers arrived to assist and, together, the officers carried defendant to the departure area. 2018 Mem. Op. at 3. Defendant's thrashing about injured several CBP officers. *Id.* Eventually, the CBP officers were able to subdue defendant and place him in a holding cell. After defendant's physical acts of resistance, CBP and ICE decided that defendant could not be placed on a commercial airliner and removed, and defendant was returned to ICE custody. 2018 Mem. Op. at 4.

Following the August 7, 2017 incident, defendant was charged in a two-count indictment with (i) preventing or hampering his departure from the United States, in violation of 8 U.S.C. § 1253(a)(1)(C) (Count I); and (ii) forcibly resisting, opposing, impeding or interfering with an ICE officer, in violation of 18 U.S.C. § 111(a) (Count II). *See* Indictment (Dkt. 11). On December 7, 2017, a jury found defendant guilty on both counts. *See* Jury Verdict (Dkt. 52). Defendant then filed a motion for acquittal, which was granted with respect to Count II, because the evidence at trial demonstrated that defendant resisted CBP not ICE officers. *See* 2018 Mem. Op. at 12.

In calculating defendant's guidelines range the probation officer applied a ten-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(2)(A) because, before he was ordered deported from the United States for the first time, he sustained a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more. *See* PSR ¶ 20. Defendant challenged the application of the sentencing enhancement. On February 15, 2020, an Order issued finding that the ten-level sentencing enhancement applied. *See* Order, dated February 15, 2020 (Dkt. 74). In the Order, the Court found that defendant's removal order did not become final until after he was retried on his state criminal charges. *Id.*

Due to the ten-level enhancement, defendant had a total offense level of 18 and a criminal history category of III. *See* Judgment in a Criminal Case at 7 (Dkt. 77). Accordingly, a guidelines range of 33 to 41 months applied. *See id.* On February 16, 2018, defendant was sentenced to 36 months' imprisonment and a 3-year term of supervised release. *See id.* at 2-3. Defendant did not appeal his sentence or conviction.

On January 3, 2019, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. *See* Dkt. 80 ("First Motion"). In his First Motion, defendant argued and that the state convictions used to enhance his offense were invalid. *See id.* On March 22, 2019, the government responded to the First Motion. On April 3, 2019, before the Court ruled on the First Motion, defendant moved to dismiss his First Motion and, on April 5, 2019, the Court granted the motion to dismiss without prejudice. *See* Order, dated April 5, 2019 (Dkt. 89).

On June 19, 2019, defendant filed the second, currently pending, motion to vacate his sentence under 28 U.S.C. § 2255. *See* Dkt. 90 ("Second Motion"). In the Second Motion, defendant argues: (i) that trial counsel was ineffective for failing to investigate his state conviction; (ii) that the state convictions are void due to an ineffective waiver of assistance of counsel; and (iii) that the state convictions are invalid because the state of Maryland violated his rights under the Fifth and Fourteenth Amendments. *Id.*

On August 30, 2019, an Order issued requiring the government to respond to the Second Motion. On October 4, 2019, the government filed a motion to compel disclosure of information from former defense counsel. *See* Dkt. 98. On October 9, 2019, an Order issued by Magistrate Judge John F. Anderson granting the motion to compel and requiring the Office of the Federal Public Defender to respond to the allegations in the Second Motion. *See* Order, dated October 9,

4

2019 (Dkt. 99). On October 10, 2019, after a motion for reconsideration was filed by the Office of the Federal Public Defender, Magistrate Judge Anderson vacated his prior order and held the government's motion in abeyance. *See* Order, dated October 10, 2019 (Dkt. 101). On October 25, 2019, the government filed its response opposing the Second Motion.

## II.

A defendant attacking his conviction bears the burden of establishing at least one ground that justifies relief. *See* 28 U.S.C. § 2255. This burden is a "significantly higher hurdle" than "would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). It is well-settled that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1999). Stated plainly, "[r]elief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise 'inherently result[] in a complete miscarriage of justice.'" *United States v. Hawkins*, No. 11-cr-48, 2012 3578924, at *1 (E.D. Va. Aug. 17, 2012). As discussed below, each of defendant's asserted grounds for relief fails to meet this high hurdle and, therefore, plaintiff's Second Motion must be denied and dismissed.

### A.

As an initial matter, the government argues that defendant's Second Motion must be dismissed as untimely. Motions to vacate pursuant to § 2255 are "subject to a one-year statute of limitations governed by § 2255(f)." *Whiteside v. United States*, 775 F.3d 180, 182-83 (4th Cir. 2014). The limitations period begins to run from the date that a conviction becomes final.

Here, because defendant did not appeal his conviction or sentence, his conviction became

final fourteen days after the Judgment was entered against him. *See United States v. Osborne*, 452 F. App'x 294, 295 (4th Cir. 2011) (explaining that a conviction becomes "final" for § 2255(f)(1) purposes at the "expiration of the time for seeking [a direct appeal]" and that the appeal period in a criminal case extends "fourteen days from the date when judgment was 'entered on the criminal docket'"). The Judgment was entered on February 17, 2018; therefore, defendant's conviction became final on March 4, 2018. *See* Dkt. 77. Accordingly, the time to file a § 2255 motion expired on March 4, 2019, one year later. Although the First Motion was timely filed, the Second Motion was untimely because it was not filed until June 19, 2019, well beyond the one-year limitations period.

Although the limitations period may be tolled, such tolling is not appropriate here. The Fourth Circuit has recognized that tolling is only available in "those rare circumstances where – due to circumstances external to the party's own conduct – it would unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Such circumstances are not present here. Defendant sought to dismiss the First Motion in this Court so that he could pursue relief in the District of Maryland. *See* Dkt. 88. Defendant gives no explanation for the late refiling of his Second Motion. Thus, equitable tolling does not serve to save defendant's untimely motion. *See United States v. Sosa*, 364 F.3d 507, 512-13 (4th Cir. 2004) (holding no equitable tolling where defendant believed that his first motion reset the statute of limitations period for his second motion).

Even assuming *arguendo* that equitable tolling applied and that the statute of limitations was tolled during the pendency of the First Motion (which it was not), defendant's Second

6

Motion would still be untimely. If the statute of limitations was tolled from January 3, 2019, when defendant filed the First Motion, until April 5, 2019, when the First Motion was dismissed without prejudice, then the time to file the Second Motion expired on June 5, 2019. Thus, even if equitable tolling principles applied, defendant's Second Motion, filed on June 19, 2019, would still be untimely. Accordingly, defendant's motion must be denied and dismissed as untimely.

**B.**

Defendant's first ground for relief is alleged ineffective assistance of counsel. To establish ineffective assistance of counsel, defendant must demonstrate: (i) that his counsel's performance fell below an objective standard of reasonableness; and (ii) that counsel's inadequate performance prejudice defendant. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first *Strickland* prong requires that a defendant show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Moreover, "'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' in order to avoid the 'distorting effects of hindsight.'" *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008). The second *Strickland* prong requires that defendant show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This requires a showing of "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, (1982). "[U]nsubstantiated and largely conclusory statements" are insufficient to carry defendant's burden on either *Strickland* prong. *Umar v. United States*, 161 F. Supp. 3d 366, 375 (E.D. Va. 2015) (quoting *United States v. Turcotte*, 405 F.3d 515, 537 (7th

Cir. 2005)). Defendant cannot meet his burden under *Strickland* as his counsel was not ineffective and his Second Motion must be denied in this regard.

Defendant argues that counsel was allegedly ineffective "for failure to investigate the state of Maryland invalid 2014 conviction before the federal proceedings." Second Motion at 2. He further asserts that the government blamed his defense counsel for failing to investigate the state conviction when it responded to the First Motion. *See id.* at 3.[3] Defendant argues that he was prejudiced by the failure to investigate because his sentence was enhanced based on the state conviction and the state conviction was the predicate to the removal order and the offense of conviction. *Id.*

Defendant is wrong on multiple fronts. First, defendant cannot show prejudice based on the enhancement of his sentence due to the state conviction. *See United States v. Foote*, 784 F.3d 931, 939 (4th Cir. 2015) ("[M]isapplication of the sentencing guidelines does not amount to a miscarriage of justice.").

Second, defendant's allegations of a failure to investigate are both conclusory and wrong based on the record. In a § 2255 motion, a defendant must specifically explain how counsel was ineffective, and in the case of a failure to investigate claim, must explain what counsel should have investigated and what the investigation would have revealed. Defendant fails to allege facts sufficient to support his claims. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (noting that conclusory allegations that counsel failed adequately to investigate,

---

[3] Defendant mischaracterizes the government's position in response to the First Motion. In its response and opposition to the First Motion, the government merely pointed out that defendant did not raise the alleged constitutional defects at sentencing or on direct appeal. The more accurate description of the government's position in mentioning these facts is that defense counsel did not raise these alleged defects with the 2014 state convictions because those arguments were meritless.

8

without factual support, are insufficient to raise a constitutional issue) *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152 (1996).[4] Additionally, defendant fails to allege that he provided defense counsel with information regarding his state convictions that counsel failed to investigate. *See Rompilla v. Beard*, 545 U.S. 374, 382-83 ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up."); *Cope v. United States*, 385 F. App'x 531, 533-34 (6th Cir. 2010) (holding that "an attorney does not provide deficient counsel by making investigative decisions based quite properly on information supplied by the defendant"). Moreover, it is clear that defense counsel *did* carefully examine the state conviction, because defense counsel: (i) moved to exclude evidence regarding defendant's prior convictions (Dkt. 36); and (ii) argued that a sentencing enhancement based on defendant's prior convictions should not apply (Dkt. 65).

Third, it would have been inappropriate for defendant, through his defense counsel, to engage in a collateral attack on his state conviction in the federal proceeding. *See Custis v. United States*, 511 U.S. 485 (1994); *Daniels v. United States*, 532 U.S. 374 (2001) (holding that prior conviction that "has not been set aside on direct or collateral review, . . . is presumptively valid"). In *Daniels*, the Supreme Court noted that "[t]he sole basis upon which petitioner Daniels challenges his current federal sentence is that two of his prior state convictions were the products of inadequate guilty pleas and ineffective assistance of counsel." *Daniels*, 532 U.S. at 384. The Supreme Court held that the petitioner could not "now use a § 2255 motion to

---

[4] *See United States v. Edwards*, 2018 WL 6183280, at *6 (E.D. Va. Nov. 27, 2018) (holding that ineffective assistance claim fails because defendant failed "to proffer what investigation counsel failed to undertake"); *Holmes v. United States*, 2015 WL 402957, at * (E.D. Va. Jan. 28, 2015) (holding that defendant's "failure-to-investigate claim is conclusory").

collaterally attack those convictions." *Id.*[5] The only exception to the rules established in *Custis* and *Daniels* occurs in the event, as did not occur here, there was a "failure to appoint counsel." *Custis*, 511 U.S. at 496. This exception does not apply here, however, where defendant waived his right to counsel. *See United States v. Farley*, 23 F. App'x 235, 237 (6th Cir. 2001) (holding that, where a defendant waived his right to counsel, the "conviction is not considered 'uncounseled' and does not give rise to the *Custis* exception").[6]

Finally, as discussed below, defendant's claims regarding his state convictions fail on the merits and, thus, there can be no prejudice to defendant from counsel's decision not to investigate or raise them. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot for the basis of a successful ineffective assistance of counsel claim . . . .").

In sum, defendant therefore cannot show either that counsel was ineffective for failing to investigate his state convictions – because counsel clearly examined those convictions carefully and moved to exclude them from trial and from consideration at sentencing – or that defendant was prejudiced by any alleged failure to investigate – because he may not base a § 2255 motion on an argument that the sentencing guidelines were incorrect or use his § 2255 motion to engage in a collateral attack on his state convictions. Accordingly, counsel was not ineffective and this ground for plaintiff's Second Motion must be denied.

---

[5] *See Turner v. United States*, 183 F.3d 474 (6th Cir. 1999) ("We read *Custis* as requiring [the defendant] to challenge the underlying state convictions first in the state court or in an independent habeas proceeding . . . . Only after [the defendant] succeeds in such a challenge can he seek to reopen his [federal] sentence in this case.").

[6] *See United States v. Martin*, 2010 WL 4789625, at *2 (E.D. Va. 2010) (noting that *Custis* exception applies only to a "complete denial of the right to counsel and does not extend to lesser Sixth Amendment violations") (citing *United States v. Bradshaw*, 999 F.2d 798, 801 (4th Cir. 1993)).

## C.

Defendant next bases his challenge to his federal conviction and sentence on the invalidity of his state convictions. Defendant asserts that his 2014 state convictions should not have been considered in the federal proceeding and are invalid for two reasons: (i) the state convictions should be voided based on ineffective waiver of assistance of counsel before the state court; and (ii) the state convictions should be voided because the state appellate court violated defendant's right to equal protection when it failed to provide defendant with a free transcript of the trial court proceedings and then dismissed his appeal for failure to obtain a transcript. The government asserts that these claims are procedurally defaulted because they were not raised at his initial sentencing or on direct appeal and that they also fail on the merits. The government is correct in both respects and both grounds for defendant's Second Motion must be denied as procedurally defaulted.

On collateral review, the doctrine of procedural default generally bars claims that "could have been but were not pursued on direct appeal." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). Both of defendant's claims regarding the consideration of his state conviction could have been raised at sentencing or on direct appeal. Defendant knew the circumstances regarding his alleged invalid waiver of counsel in state court and regarding the state court's alleged failure to provide equal protection at the time he was sentenced because the appeal on which he basis this claim was dismissed by the Maryland Court of Special Appeals on March 10, 2015, well before defendant was sentenced in this case. In this case, defendant chose not to appeal his conviction or sentence on direct appeal and thus his claims are procedurally defaulted. *See Bousely v. United States*, 523 U.S. 614, 622 (1998) (finding procedural default where claim

could have been "fully and completely addressed on direct review based on the record"); *Pettiford*, 612 F.3d at 280.

To be sure, procedural default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) that 'cause' for the default exists and that 'prejudice result[ed] therefrom." *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). Neither of these two elements applies here because defendant has not raised – and cannot raise – a claim of actual innocence, and because defendant has not shown – and cannot show – cause for his default. Indeed, despite defendant's knowledge of both of the alleged flaws in his state court convictions, defendant did not appeal any part of his conviction or sentence in this case. Accordingly, defendant's claims in this regard are procedurally defaulted and must be denied and dismissed.

### 1.

Even assuming *arguendo* that defendant's claims are not procedurally defaulted, defendant's claims are meritless. To begin with, defendant argues that his state court waiver of his right to counsel was invalid.[7] With respect to defendant's claim of an invalid waiver of the right to counsel, defendant cannot show that his waiver was unknowing or involuntary. *See Iowa v. Tovar*, 541 U.S. 77, 92 (2004) ("[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to counsel.").

---

[7] Defendant did not raise this as a ground for his First Motion pursuant to § 2255 and apparently did not intend to make this argument until the government, in construing and opposing the First Motion, made arguments regarding defendant's waiver of his right to counsel in state court. It thus appears that the reason defendant procedurally defaulted on this claim is that defendant did not believe that his waiver was unknowing and involuntary until the government made arguments about the knowingness and voluntariness of his waiver of counsel in the state proceeding.

12

It is first worth recounting the events the Maryland state court. There, after disagreements with his public defender regarding whether he should enter a guilty plea, defendant "sent a note to the judge and to the prosecutor on the case that [defendant] would like to handle [the] legal matter on [his] own." Second Motion at 6. The state court docket reflects defendant's request to proceed *pro se* on June 16, 2014. *See State v. Ameyapoh* No. 103328C, Docket, Entry 296 (Dkt. 102-2) ("State Docket"). Thereafter, the state court held a hearing on June 18, 2014 and granted defendant's oral motion to strike the appearance of the public defender on defendant's behalf. *See id.* at Entries 299-303.

After a jury had been selected, defendant had a change of heart and attempted to obtain new counsel. *See* Second Motion at 9. The transcript of the proceeding reflects the following exchange:

> Mr. Ameyapoh: Yeah, I don't know if it's too late now, can I get a lawyer?
>
> Court: Well, unfortunately, I think it is too late. We went through a very long discussion on the record a week and a half ago about your right to counsel and you told me, in no uncertain terms, that you did not want to be represented, that you wanted to represent yourself. That's your absolute right, but I did make a finding that you had made a knowing and voluntary waiver of your right to counsel.
>
> You may recall that I tried very hard to convince you to keep your attorney because I felt that it would be to your advantage to do that, but you made a choice and I respected that choice. Now, we've begun this process. We have begun jury selection. We have brought in some 80 jurors to this courtroom who were called in specifically for this case and the right to counsel is not something you can say, yes, I do, no, I don't, yes, I do, no, I don't.
> . . .

*State v. Ameyapoh* No. 103328C, June 30, 2014 State Transcript at 107-108 (Dkt. 90-3) ("June 30 State Tr."). The state court judge explained that, even if the public defender was reappointed as counsel for defendant, that attorney would have no opportunity to prepare for

13

trial. Defendant then revealed his true purpose for changing his mind and seeking the appointment of counsel on the day of trial. Specifically, defendant admitted that he had changed his mind so that he could "claim ineffective assistance of counsel in the future" and so "she [meaning his public defender] [would] take the blame." June 30, State Tr. at 108-09.

The state court then reviewed that defendant had knowingly and voluntarily waived his right to counsel. The transcript reflects the following exchange:

> The Court: . . . I spent 45 minutes in Court talking to you. I was very polite to you. I gave you every opportunity to discuss the matter with Ms. Chernosky [the public defender].
>
> Mr. Ameyapoh: Yeah. You did.
>
> The Court: I put on the husher. I let you have another discussion with her in Court and I really strongly suggested to you that you should continue to be represented by the Public Defender's Office. Do you remember that?
>
> Mr. Ameyapoh: I remember.
>
> The Court: All right and you told me, you were very clear about it, I asked you several times, you told me that no, you wanted to be pro se. You used those words, pro se, you wanted to represent yourself. And I explained to you that you had a constitutional right to be represented by an attorney. That an attorney can be helpful to you in defending the matter, that your defense attorney had arranged to call an expert witness on your behalf.
>
> . . . You told me that you did not want her to represent you. That you understood that and that you would not be calling an expert witness . . . Do you remember those things?
>
> Mr. Ameyapoh: Yeah, I remember, I remember that, but . . . I thought I know [sic] about the case, but not really.

June 30 State Tr. at 111-12.

Defendant now asserts that his waiver was not knowing or voluntary, because he was not "psychologically normal" and because he was paranoid due to attacks that he faced in prison. *See*

14

Second Motion at 8-9. Defendant provides no evidence of any diagnosis of any mental illness or evidence of any attacks at the time that defendant waived his right to counsel in the state proceedings. Defendant's conclusory allegations that his waiver was unknowing and involuntary are insufficient to meet his burden under § 2255. *See United States v. Krejcarek*, 453 F.3d 1290, 1298 (10th Cir. 2006) (holding that defendant "does not proffer any evidence to support his claim" and that his "conclusory statement" was insufficient).[8] Indeed, the only evidence of defendant's mental state is a Office of Inmate Health Services record from five months *after* trial. *See* December 19, 2014 Office of Inmate Health Services Record (Dkt. 90-1) ("Health Record"). In that record, defendant reported that he had no history of mental illness and demonstrated "unremarkable" behavior and psychomotor behaviors. Health Record at 1.[9] The Health Record notes that defendant also complained of paranoid delusions during that meeting, but the psychologist found defendant's behavior appropriate and unremarkable. Thus, the Health Record provides a further basis that defendant's waiver five months prior was not unknowing or involuntary.

Although no party submitted a transcript of the June 18, 2014 hearing at which defendant initially waived his right to counsel, the June 30 State Tr. reveals: (i) that the state court spent 45 minutes reviewing whether defendant's plea was knowing and voluntary and determined that defendant's waiver was both knowing and voluntary; (ii) that the state court attempted to convince defendant to keep the public defender as counsel; (iii) that defendant insisted on proceeding *pro*

---

[8] *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (noting that "conclusory allegations unsupported by specifics [are] subject to summary dismissal"); *Shelton v. Thaler*, 2009 WL 3735435 (S.D. Texas Nov. 4, 2009) ("Shelton's conclusory allegations do not overcome the validity of his waiver or his assertion in open court that he wished to proceed *pro se*.").

[9] The Health record indicates that defendant appeared depressed, but this is not surprising given defendant's convictions and subsequent incarceration. *See* Health Record at 1.

*se*; and (iv) that the reason for defendant's change of heart was a desire to preserve an ineffective assistance of counsel claim. Thus, on the record before the Court, defendant has not met his burden to establish that his waiver was not knowing or voluntary. Indeed, all of the record evidence before the Court demonstrates that the defendant's waiver of his right to counsel was knowing and voluntary and that defendant appeared in state court without counsel by choice. Accordingly, defendant's claim in this regard fails on the merits.

### 2.

Defendant's final ground for challenging his conviction and sentence is his argument that the state of Maryland violated his rights to equal protection because it did not provide him with a transcript on appeal causing his appeal of his state convictions to be dismissed. Here again, defendant is incorrect, and this claim also fails on the merits.

To begin with, defendant may not challenge his state conviction in federal court based on an alleged equal protection violation under § 2255. *See Daniels*, 532 U.S. at 382-83 (holding that, if a defendant failed to pursue direct or collateral attack, "then the defendant is without recourse"). As the Fourth Circuit recognizes, "[i]nsisting that defendants use the correct process to challenge their convictions and sentences is not empty formalism" because "[c]ourts have a strong interest in preserving valid final judgments and not expending judicial resources on cases that upset those judgments." *United States v. Sanchez*, 891 F.3d 535, 539-40 (4th Cir. 2017).

Moreover, defendant has failed to demonstrate that he complied with the requirements that the state court has in place to receive a free transcript. Defendant makes a conclusory allegation that he complied with Maryland Rule 1-325, which provides for the preparation of a transcript on

16

appeal,[10] but does not allege any detailed facts regarding his purported compliance. Thus, defendant has not established that he was denied a transcript or that his appeal was dismissed on the basis of indigency. *See Griffin v. Illinois*, 351 U.S. 12, 19 (1956) (plurality).

The Fourth Circuit has reviewed the process employed by the state of Maryland, under the 2014 version of Maryland Rule 1-325, to provide defendants with a free transcript on appeal and found that the process was constitutional. *See Miller v. Smith*, 115 F.3d 1136 (4th Cir. 1997). Specifically, the Fourth Circuit, in *Miller*, noted that the equal protection analysis involves the "basic question" of "adequacy of [a defendant's] access to procedures for review of his conviction" and whether the state has "arbitrarily cut off the appeal rights for indigents while leaving open avenues of appeal for more affluent persons." *Id.* at 1141. There, the Fourth Circuit held that the defendant "would have received legal representation . . . and a trial transcript had he applied for legal representation with the Public Defender's Office" and that his equal protection rights were not violated when he made the choice not to apply to the Public Defender's Office. *Id.* at 1142. Like the defendant in *Miller*, defendant here has presented no evidence that he was "cut off" from his appellate rights by virtue of his indigency. *Id.*

Defendant presents no evidence that he complied with Maryland Rule 1-325(b). Defendant's allegation that he "did everything he could to be entitled to a free trial transcript pursuant to Maryland Rule 1-325(b)," Second Motion at 14, is vague and conclusory and fails to

---

[10] The 2014 version of the Maryland Rule 1-325(b), which applied to defendant's appeal, provides:

> The court shall order the State to pay the court costs related to an appeal or an application for leave to appeal and the costs of preparing any transcript of testimony, brief, appendices, and record extract necessary in connection with the appeal, in any case in which (1) the Public Defender's Office is authorized by these rules or laws or other law to represent a party, (2) the Public Defendant has declined representation of the party, and (3) the party is unable by reason of poverty to pay those costs.

meet his burden under § 2255. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (holding that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). Accordingly, defendant's motion in this regard must be denied and dismissed.

### III.

For the reasons set forth above, motion to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255 must be denied.[11]

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to defendant at his last known address and to all counsel of record.

Alexandria, VA
May 13, 2020

T. S. Ellis, III
United States District Judge

---

[11] Because this Memorandum Opinion disposes of the Second Motion in its entirety, the government's motion to compel must be denied as moot.